IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NICK WILLIAM SCHALLER,

                                                         OPINION and ORDER

                Plaintiff,

                                                         08-cv-403-bbc

     v.

GLEN HEINZL,

                Defendant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights lawsuit, plaintiff Nick William Schaller, Sr. contends that defendant Glen Heinzl failed to provide adequate treatment after plaintiff complained that certain hardware surgically implanted in his leg was coming apart and causing him pain. The case is before the court on defendant's motion for summary judgment. Because plaintiff has not come forward with evidence that defendant's failure to treat him sooner than he did was the result of his deliberate indifference to plaintiff's serious medical need, I will grant defendant's motion.

---

[1] Although the original caption named "Dr. Heinzl," defendant has provided his complete name in the summary judgment materials. I have amended the caption accordingly.

1

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

On June 23, 2006, plaintiff Nick William Schaller, Sr. was badly injured in a motorcycle accident. To reconstruct plaintiff's leg, doctors performed a surgery that involved implanting certain hardware such as rods, pins and screws in the leg and ankle. Following the surgery, plaintiff experienced periodic pain in the leg but could still walk around on it "reasonably well." On June 19, 2007, he was incarcerated at New Lisbon Correctional Institution, where defendant Glen Heinzl is a medical doctor. From May to July 2008, defendant was the only medical doctor employed at the institution.

In late May 2008, plaintiff heard a tearing noise while climbing onto his bunk and immediately began to feel intense pain in his left leg near the surgery site. After that incident, plaintiff noticed that he could move some of the rods and pins in ways that he had not been able to before the incident. Since at least late May 2008, plaintiff has had to use a cane to assist him in walking. In addition, since that time, plaintiff's leg has caused him severe pain on frequent occasions, sometimes waking him from his sleep.

On June 11, 2008, plaintiff submitted a health service request to the prison's Health Services Unit, in which he stated, "My (L) leg needs to be x-rayed as I can hardly step on it.

I believe my shattered leg which is plated and screwed back together in 2006 is coming apart, or the bones are deteriorating."

The usual procedure is for health services unit staff to collect requests daily for review by a nurse on night watch. The night nurse reviews the prisoner's file as well and discusses the request with other nurses and doctors on staff to decide whether to schedule an appointment with a nurse, doctor or psychiatrist. Usually, staff respond to health service requests the same day they receive them. When a request requires an appointment with the facility doctor, the usual practice is to place a copy of the health service request on the doctor's "charting cart."

Plaintiff was seen by a nurse on June 18, 2008 and showed the nurse how he could move certain pieces of the hardware in his leg. The nurse told him that he needed to see defendant "right away" and scheduled him for a will-call appointment with defendant on June 20, 2008. Defendant did not have time in his schedule to see plaintiff on that date. Several other prisoners who were scheduled to see defendant on June 20 had their appointments rescheduled to dates in July or August, but plaintiff was not among the inmates who received a new appointment at that time.

On June 25, 2008, plaintiff still had not seen defendant, so he filed another request for medical treatment on a separate form, an "interview/information request." He did not receive any response within three days, so on June 28, 2008, he filed a health service request,

3

stating that he was in "extreme pain." Upon receipt, the nurse who reviewed plaintiff's June 28, 2008 request forwarded a copy to defendant. On July 2, 2008, plaintiff was told that he was scheduled to see defendant on July 7, 2008.

At the July 7 appointment, plaintiff said that his left leg was causing him extreme pain, that it felt as if a screw was loose in his left ankle that would move when he pressed up and down or back and forth and that he needed a longer-acting pain pill than the naproxen he had been prescribed. When defendant responded that plaintiff had not even been refilling the naproxen he had been prescribed, plaintiff asked for ibuprofen or morphine instead.

Defendant noticed no skin irritation over the lateral screw and no "give" when he pressed back and forth, but could feel a little give when pressing up and down. At some point during the examination, he said to plaintiff, "You weren't joking," in reference to plaintiff's complaints. After examining plaintiff, defendant concluded that plaintiff's pain was severe enough to warrant an x-ray and a prescription for ibuprofen.

OPINION

Under the Eighth Amendment, a prison official is prohibited from acting or failing to act with deliberate indifference to a prisoner's serious medical needs  Doing so is considered a form of "unnecessary and wanton infliction of pain" prohibited by the Eighth

4

Amendment. Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).

Defendant devotes attention to plaintiff's credibility, in the hopes of undermining plaintiff's statement that he was experiencing severe pain, presumably in an effort to show that defendant did not have a serious medical need. Rather than take up this dubious argument, I will start with the question whether defendant was deliberately indifferent to the allegedly severe pain. As I explain, even assuming that plaintiff was in severe pain and defendant knew about it, under the circumstances the delay in seeing plaintiff did not amount to deliberate indifference.

Although it appeared from his complaint that plaintiff was challenging both the delay in treatment and the treatment itself, plaintiff has stated that his "claim is not about the adequacy of the medical care he received after July 7, 2008 [once defendant saw him], but rather, is about the fact that he was not seen in response to his" health services request. Plt.'s Br., dkt. #76, at 9. Thus, the only question is whether it was deliberate indifference for defendant to delay seeing plaintiff from the time he filed his first health service request on June 11, 2008, until July 7.

Defendant points out that it is not clear whether defendant even knew about plaintiff's pain until the date he saw him. However, a reasonable jury could draw an inference that defendant learned about plaintiff's complaints of pain at or near the time

5

plaintiff filed his first health service request. It is undisputed that health service requests such as plaintiff's were typically reviewed the same day and that the nurse would often discuss how to handle the requests with the doctor on staff. At the time, defendant was the only doctor employed at the institution, allowing the inference that he may have learned something about the June 11 request through consultation with a nurse shortly after it was submitted. In addition, it is reasonable to infer that defendant would have found out about the request after June 18, 2008 when a nurse allegedly scheduled a June 20, 2008 appointment with him for plaintiff.

Even so, a jury could not find that defendant acted with deliberate indifference. Plaintiff seems to think that the question to ask is whether defendant should have ignored plaintiff's cries for help as long as he did, but he is wrong. If defendant knew about plaintiff's June 11 request, it was not in a vacuum, but rather in the context of the care plaintiff was already receiving from the health services unit. Thus, it is possible that he learned about it in the context of consulting with the nurse assigned to handle the request; if so, the question is whether it was deliberately indifferent to leave plaintiff in the care of the nurse, in light of plaintiff's allegations of pain. It is possible that defendant received a copy of plaintiff's health service request once the nurse seeing plaintiff on June 18, 2008 set up an appointment for plaintiff to meet with defendant; in that case, the question is whether it was deliberately indifferent to take no action on the request other than to wait for the

6

scheduled appointment. (Although it appears that the June 20 appointment was canceled without rescheduling, plaintiff has not argued or adduced evidence that defendant made any of these scheduling decisions himself.)

Both questions must be answered with an eye to the high standard applied to deliberate indifference claims against treating physicians. To amount to deliberate indifference, a doctor's actions (or inactions) must be something worse than mere malpractice; they must be "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition, Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996), or so "far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." Duckworth v. Ahmad, 532 F.3d 675, 680 (7th Cir. 2008) (citation omitted).

At most, defendant was aware of what plaintiff had said, which is that he could "hardly step on" his leg and believed it needed to be x-rayed because his hardware was coming apart or the bones were deteriorating. Although plaintiff alleges that the nurse who saw him on June 18, 2008 thought he should be seen by a doctor "right away," he has not shown that she ever expressed this sense of urgency to defendant. (It is possible that defendant may have read what was written in plaintiff's progress notes, including the notes from the June 18, 2008 meeting, although neither party suggests this possibility. At any rate, those notes do not suggest that the situation was "urgent.") The evidence does not

7

allow a finding that it was deliberate indifference either to allow plaintiff to remain in the care of a nurse or to allow plaintiff to wait for an appointment rather than taking a more active response to his situation. Without more, such decisions cannot be called "blatantly inappropriate" or "far afield" of professional standards.

This leaves plaintiff's June 28, 2008 request stating that he was in "extreme pain," a copy of which was forwarded to defendant. However, defendant saw plaintiff nine days later on July 7, 2008. Perhaps in some situations, requiring a prisoner to wait nine days for care would be problematic, but here there is no suggestion that defendant had any reason to think that plaintiff was not receiving proper treatment from the nurses or needed a prescription for pain medicine. Indeed, when defendant saw plaintiff on July 7, 2008, he noted that plaintiff had a naproxen prescription but had not been filling it.

What the facts establish is that defendant may have been aware that plaintiff was in severe pain despite his care from the nurse and that his leg seemed to require the attention of a doctor. To prevail on his claim of deliberate indifference, plaintiff had to present evidence that, under these circumstances, a nine-day wait was "blatantly inappropriate" or "far afield" of professional standards. He has not. Because plaintiff has failed to present evidence that defendant's failure to see him sooner was "deliberate indifference," I will grant defendant's motion for summary judgment.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Glen Heinzl, dkt. #65, is GRANTED. The clerk is directed to enter judgment in favor of defendant and close this case.

Entered this 18th day of December, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

9